RIBBON CLIFF FRUIT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12337.   Promulgated· May 18, 1928.

*Alfred Gfeller, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, for the respondent.

14

**OPINION.**

LANSDON: Petitioner alleges error on the part of respondent in computing its net income for the year under consideration, in accordance with the accrual method of accounting. It contends that it is privileged to adopt any method of accounting which clearly reflects its income; that it is entitled to compute its net income in accordance with the receipts and disbursements method or the

accrual method. Respondent answers that petitioner's books of account were kept in accordance with the accrual method of accounting, and that under the provisions of section 212(b) of the Revenue Act of 1921 the net income must be computed in accordance with that method for the purpose of the tax.

The provisions of section 212(b) of the Revenue Act of 1921 are controlling in the decision of this issue, and, so far as material here, are as follows:

The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer * * *.

There can be no question but that a taxpayer is privileged to adopt any method of accounting which it deems necessary for its business and that truly reflects its income. The statute contemplates that each taxpayer shall adopt such forms and methods of accounting as are in its judgment best suited to its purposes. Having adopted a particular method of accounting, and regularly employed that method in keeping its books, the statute requires that the taxpayer shall compute its net income, for the purposes of the tax, in accordance with that method, if income is clearly reflected thereby.

The evidence leaves no room for doubt as to the method of accounting regularly employed by this petitioner in keeping its books of account for the year under consideration. The testimony of its own witnesses and of the revenue agent, and the books which are in evidence, establish very conclusively that the books were kept in accordance with the accrual method of accounting. There is no ground for the contention, advanced by counsel for petitioner in the brief filed after the hearing, that the accrual items included in the annual balance sheets were placed there for memorandum purposes only. Our examination of the books discloses that the petitioner maintains, as a part of its regular system of accounts, such accounts as accounts and bills receivable, accounts and bills payable, inventories, and accrued interest, all of which are necessary under the accrual method of accounting and which certainly have no place in a system of accounts based on the cash receipts and disbursements method, and that the income and expenses reflected by these accounts have been carried through the nominal income and operating accounts to profit and loss account, where they are reflected in the net earnings of the company. The only deduction that can be drawn from these facts is that the petitioner regularly employed the accrual method of accounting in keeping its books.

The character of the risks and hazards of a business does not always suggest or require the employment of a particular method of accounting, nor alone prove that any one method of accounting is less adequate than another of clearly reflecting income. The peti-

tioner was at liberty to employ any method of accounting which it deemed best suited to its purposes. It chose to employ the accrual method, and the evidence does not justify a conclusion that the income is not clearly reflected by that method. Having employed the accrual method of accounting in keeping its books, the statute leaves the petitioner with no other alternative than that of computing its net income in accordance with that method. When the petitioner filed its returns of income, computed in accordance with the receipts and disbursements method, it did so in direct contravention of the plain requirements of the law. The action of the respondent, of which complaint is made, was to remedy the petitioner's own error, and must be sustained.

The petitioner's claim that a certain amount overpaid as tax for 1920 should be credited against any deficiency which we may redetermine for 1921 relates to a purely administrative matter not within the jurisdiction of the Board. A correct application of the payment by the petitioner of $171.51 is within our jurisdiction since it affects the deficiency for the year in question. An examination of the record discloses, however, that the Commissioner has properly applied this item. Based upon the return, without consideration of any payment, there was a deficiency for 1921 in the amount of $3,956.83, which the Commissioner reduces by the amount of $171.51 and thereby determines that the deficiency here in issue is $3,785.32. Obviously the petitioner has already received credit for the payment of $171.51 against his tax liability for the year in controversy. On this point the action of the Commissioner is approved.

Petitioner complains that the deduction allowed by the respondent for depreciation of orchard trees is inadequate, because it is based upon a purported cost which is far less than the actual cost of bringing its orchard to the productive stage. It is alleged that the major part of the costs of planting, cultivation, and of bringing the orchard to the productive stage has been charged as expenses on the books, as paid or incurred, so that at the beginning of the taxable year the only asset account carried on the books reflecting the cost of development was "Orchard Costs," in the amount of $992.81. Te deduction for depreciation of orchard trees, which respondent has allowed, is based upon this sum of $992.81, and an estimated life of 33⅓ years. The petitioner contends that the cost of bringing the orchard to the productive stage was not less than $24,000, and that the depreciation allowance should be based upon that figure.

Section 214(a) of the Revenue Act of 1921 provides:

That in computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(8) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.

In the case of such property acquired before March 1, 1913, this deduction shall be computed upon the basis of its fair market price or value as of March 1, 1913.

The 80 acres of land on which the orchard stands were acquired as a part of a larger tract at or about the time of organization in 1909. When acquired, the tract included 8 acres of miscellaneous fruit trees, principally apple and pear, about 13 years old, and 5 acres of Stayman winesap apple trees about 4 or 5 years old. During the ensuing four years, petitioner planted additional apple and pear trees, so that by the close of 1913 there were approximately 80 acres of fruit trees under cultivation and in various stages of maturity. No more acreage was planted after that year. The record does not disclose the exact situation as to the stage of planting which had been reached on March 1, 1913; but it would appear from the facts that planting of the entire 80 acres was well-nigh completed on that date. Thereafter, the petitioner incurred expenses of bringing the orchard to a productive stage. Under these circumstances it appears clear that the basis for computing the depreciation allowance of this petitioner is the fair market price or value of such of the orchard trees as had been planted on March 1, 1913, plus the costs incurred after that date in planting additional acreage and bringing the orchard to the productive stage.

The record is void of any evidence bearing upon the March 1, 1913, value of petitioner's orchard. The evidence adduced at the hearing is directed solely to establishing the probable cost of bringing the orchard to the productive stage. Admitting, without deciding, that this cost amounted to $24,000, there is no evidence as to the proportions incurred, respectively, prior to and after March 1, 1913; although it seems quite certain that the major part thereof must have been incurred prior to that date during years when the orchard was being set out. We are then without any evidence of the fair market price or value, as of March 1, 1913, of such of the trees as had been planted on that date, and of the costs incurred after that date in planting additional acreage and bringing the orchard to the productive stage. It may be that the costs incurred to March 1, 1913, are a fair index of the fair market price or value of the orchard trees on that date, in which event the basis for computing the depreciation allowance would be the equivalent of the total costs incurred in bringing the orchard to the productive stage; but we are not in possession of any facts upon which we could predicate such a conclusion, and, therefore, on this point we can decide only that the petitioner is entitled to increased depreciation allowance on orchard cost of $992.81, on the basis of a useful life of its orchard of 18 years.

*Judgment will be entered under Rule 50.*