*Judgments will be entered under Rule 50.*

BRADSTREET COMPANY OF MAINE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 38555, 41773. Promulgated July 13, 1931.

*F. Morse Hubbard, Esq.*, and *Barham R. Gary, Esq.*, for the petitioner.

*T. M. Mather, Esq.*, for the respondent.

OPINION.

MURDOCK: The petitioner has apparently abandoned its second assignment of error, at least no reference to it is made in the brief. However, if any doubt exists as to whether the contention has or has not been abandoned, it is sufficient to say that the books were kept upon the basis of a fiscal year ending April 30 and the applicable provisions of the taxing statutes require that " net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be)," and therefore the respondent's action in computing income upon the basis of a fiscal year ending April 30 was proper. Sections 212 (b) and 232, Revenue Acts of 1918, 1921, 1924 and 1926.

The petitioner's first contention is that, instead of accruing the total amount of its subscriptions when they are due and payable, the Connecticut Company should accrue only one-twelfth of a yearly subscription in each month of the period covered by the subscription. Section 212 (b) of the Revenue Act of 1918 provides that " the net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but * * * if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income." Under section 213 (a), all items of income are to be included " in the gross income for the taxable year in which

received by the taxpayer, unless, under other methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period * * *."
This provision of section 213 (a) has been interpreted by the Supreme Court as meaning that all items of income are to be included in the gross income for the taxable year in which received by the taxpayer, "unless they may be properly accounted for on the accrual basis under section 212 (b)." See *United States* v. *Anderson*, 269 U. S. 422; *Aluminum Castings Co.* v. *Routzahn*, 282 U. S. 92; and *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359. All of the foregoing provisions of the 1918 Act were reenacted without substantial change in the Revenue Acts of 1921, 1924 and 1926. Under the provisions of the statutes, the taxable net income of the Connecticut Company was required to be computed in accordance with the method of accounting consistently employed for over fifty years in keeping its books, and any departure therefrom could only be justified on the ground that the method does not clearly reflect net income. *Ribbon Cliff Fruit Co.*, 12 B. T. A. 13; *Louis Kamper*, 14 B. T. A. 767; *H. Stanley Bent*, 19 B. T. A. 181; *Alfred E. Badgley*, 21 B. T. A. 1055; and *Russell G. Finn et al.*, 22 B. T. A. 799.

This is not a case where the Commissioner has rejected the taxpayer's method of accounting. He has adopted it and insists upon its use. He computed the tax liability of these companies for the years in controversy in accordance with the method of accounting regularly employed in keeping their books. The petitioner contends that the method it employed does not clearly reflect the income, and that the computation should be made upon such basis and in such manner as does clearly reflect the income. But it argues that, in order to change the method regularly employed in keeping its books to a proper method of reflecting income, it is only necessary to defer a portion of the total amount of the subscriptions. We agree that if a proper portion of the total subscriptions could be deferred, income would be more clearly reflected, but we can not agree that it would be proper, in reporting its income for the years in controversy, to defer the accrual by accruing one-twelfth of the amount of each subscription in each of the twelve months covered by the subscription. This is the only method urged by the petitioner and is the only one for which figures have been put in evidence for recomputation of the tax liability. We are, therefore, limited in the decision of this case. If we do not accept the method and the figures contended for by the petitioner, we must approve the Commissioner's determination. No middle ground is available to us, and, indeed, it may be that it is impossible or at least impracticable to determine any figures for use in any modification of the method urged by the petitioner.

The petitioner's method would result in a substantial reduction of net income and tax for the period in controversy. The reason for this is apparent; during a period of increasing expenses, the petitioner proposes to defer reporting some of the subscription income accrued in each year, until the following year when it will be offset to a greater extent by increased deductions for expenses.

The Commissioner points out that he has computed the tax liability for the various years strictly in accordance with the method of accounting regularly employed in keeping the books of this company, a fact not denied by the petitioner. He admits that the Bradstreet Company is under an obligation to render some future service at some additional expense to it, which expense may be incurred in the year subsequent to the year in which the amount of the subscription was accrued on its books. But he argues that prior to the end of the taxable year in which a subscription is accrued, the petitioner has already incurred certain expenses which are related to the unexpired portion of the subscription period. He refers to such expenditures as the cost of securing the subscriptions and some part, perhaps a large part, of the cost of securing the data in the files at the end of a fiscal period, which data will be used during the remaining life of the subscription to furnish the service which the subscription calls for and to furnish service on new subscriptions received in the following year. The testimony is that the data in the files is kept up to date by constant revision, but it nowhere appears that all information is rechecked as often as every quarter. On the contrary, the changes made from one quarter to another in the published volumes are few in comparison with the mass of information given. The old information in the files is of substantial value to the company for a considerable time. The business of publishing monthly magazines differs from this case in a number of ways. One is that here the publications were quarterly. Therefore, says the respondent, it is improper, for example, to report in the following fiscal year two-thirds of the income from a subscription received in any January, since such a division of the subscription is inconsistent with the method of taking deductions for the expenses incident to the earning of the income from that subscription. In other words, if there is to be any allocation of the subscription between the two years, the part to be deferred to the latter period is not two-thirds, but is substantially less than two-thirds. Further, he argues that the petitioner has treated the subscriptions as income when accrued; they are usually paid in advance; and the money has been used to run the petitioner's business, to pay substantial dividends to the stockholders, and to show a large surplus, whereas, if the books were now changed to reflect the method

of accruing subscriptions contended for by the petitioner, the assets would be so materially decreased that the affiliated group would have a deficit beginning with the year 1922, which deficit would grow from about $50,000 in that year to about $207,000 in the year 1926. Finally, he calls attention to the fact that if the change contended for by the petitioner were allowed, it would require a change in invested capital for the years 1920 and 1921 for which there are no figures in the record.

There are some additional objections to the method of accruing one-twelfth of the amount of a subscription in each month. The most important service to be rendered to a subscriber seems to be the lending of the rating books. The record does not show what edition of the rating books is loaned to one who subscribes in any given quarter, i. e., whether the edition before or the one after the subscription is received. We would suppose that this would depend upon the date of the subscription and the wishes of the subscriber. The taxable year begins on May 1. Suppose a standard subscription is received on June 1. If the subscriber receives first the July edition, there is no occasion to defer accruing any of the income until the following taxable year, since all four editions will be furnished him in the taxable year of his subscription. If he receives first the April edition, the petitioner's position is even less tenable. Next, suppose a standard subscription is received on August 1. If the subscriber receives first the July edition, there is no occasion for deferring the accrual of one-fourth of the subscription until the next taxable year, for he will receive all four editions in the taxable year of his subscription. Next, suppose a subscription is received on December 1. If that subscriber receives the fall edition first, only one edition will be furnished him in the following taxable year. Why in such case should seven-twelfths of that subscription be reported in the following taxable year? Even if he receives six-twelfths of his service in the following taxable year, why should seven-twelfths of the subscription be reported in that year? Finally, suppose a subscription is received on April 1. If the subscriber receives the January and April editions, there would seem to be no good reason to report eleven-twelfths of the subscription in the following taxable year. Furthermore, if his subscription begins with the April edition so that three-fourths of the editions would be received in the next taxable year, still this fact would not justify reporting eleven-twelfths of the subscription in the next taxable year. In connection with all of these examples we must bear in mind the fact that the final spring edition goes to press some considerable time prior to the end of the fiscal year and the investigation made thereafter can only be reflected in the editions

of the next fiscal year. A similar example could be given for each month. The point is that the method contended for by the petitioner is not only not perfect, but it does not more clearly reflect income than the one now used. We have no way of properly modifying either method. Conservative accounting might justify the method urged, but sometimes, as perhaps here, good accounting dictates more conservatism than the necessities of income-tax reporting permit.

The expense of gathering new data used in the rating books published and the reports made after the close of a fiscal year on prior subscriptions and the expense of publishing those books and reports has not been shown, so even if any relief in this connection were proper, we can not give it. Cf. *Lucas* v. *American Code Co.*, 280 U. S. 445, and cases mentioned in footnote relating to reserves for contingent liabilities.

The situation here is a complicated one. If the amount of income from any particular subscription which is earned in each of the two years involved could be determined, it would no doubt be proper to make an allocation on that basis. Obviously, some part of the income is earned in each year, but a larger portion is earned in the first year than the petitioner is willing to concede. In order to give the petitioner any relief, some method of accounting which would enable a proper allocation to be made or would at least be an improvement upon the method used in keeping its books and adopted by the Commissioner would have to be devised. No such method has been suggested. Perhaps there is no such method. So far as we know the petitioner has never adopted the method it now contends is proper. It seems strange that a company engaged in a business requiring a constant consideration of good accounting practices, in order to furnish reliable financial ratings of others, would itself use for half a century a method of accounting for its own earnings which would give an unwarrantedly favorable picture of its own financial condition, if a better practicable method could be devised.

It is important to report income in such a way that it will be offset so far as possible by the expenditures incident to earning it rather than by other expenditures related to the earning of other income. *United States* v. *Anderson, supra; American National Co.* v. *United States*, 274 U. S. 99; *Ernest M. Bull, Executor*, 7 B. T. A. 993; *Morris-Poston Coal Co.*, 13 B. T. A. 344 (rev. 42 Fed. (2d) 620); art. 23, Reg. 69. In an ideal system of accounting, net income would be determined by deducting from gross income the expenses actually incurred in earning the gross. It is frequently impossible or impracticable to do this precisely in practice. Nevertheless, the

Government must have its revenues even at the expense of some niceties of accounting. The present case is one where the Commissioner has done the best he could with a difficult situation by adopting the taxpayer's method, which on the whole clearly and satisfactorily reflects income, and where the taxpayer has not used or even devised a better practicable method of reporting its income. Cf. *Murtha & Schmohl Co.*, 17 B. T. A. 442. The petitioner claims that the propriety of its contention is confirmed by the answers of four expert accountants to a hypothetical question. It is our opinion, however, that the question did not give a complete statement of the facts and that when all of the facts are considered our conclusion is the correct one for income-tax purposes. While some of the objections to the method contended for by the petitioner may seem rather unimportant, collectively they are of sufficient weight to entitle the respondent to judgment on this point. *Automobile Underwriters, Inc.*, 19 B. T. A. 1160; *O'Day Investment Co.*, 13 B. T. A. 1230; *A. P. Schiro, Inc.*, 20 B. T. A. 1026; *H. V. Greene Co.*, 5 B. T. A. 442; *United States* v. *Boston & Providence Railroad Corporation*, 37 Fed. (2d) 670; *Thomas Cronin Co.* v. *Lewellyn*, 9 Fed. (2d) 974. Cf. *Uvalde Co.*, 1 B. T. A. 932; *Douglas Properties, Inc.*, 21 B. T. A. 347.

The parties now agree that the case of *American Hide & Leather Company* v. *United States*, 284 U. S. 343, affects the decision of the third issue, but they disagree as to just what this effect is. Their differences arise over the question of what is the earliest period before the Board for which the tax liability is to be determined in this proceeding. The petitioner contends that it filed calendar year returns for the years 1918 and 1919; the Commissioner accepted the tax paid thereon in full settlement of its tax liability for those years; and, therefore, the first period before the Board should be a short period beginning January 1, 1920, and ending April 30, 1920. The Commissioner, however, has determined a deficiency for a fiscal year beginning May 1, 1919, and ending April 30, 1920, and he contends that the tax shown on the return filed for the calendar year 1920 must be applied against the tax liability determined for this fiscal period of twelve months. The petitioner's accounting methods based on a fiscal year period remained unchanged throughout the entire period under discussion. Its tax liability should have been readjusted on the basis of fiscal year returns from January 1, 1918, forward. *American Hide & Leather Company* v. *United States, supra*. If the petitioner had proven its tax liability on a fiscal year basis for the period January 1, 1918, to April 30, 1918, and for the fiscal year ending April 30, 1919, and if in addition it

had shown the amount of tax paid for the calendar years 1918 and 1919, we could have determined the effect of such proof upon the petitioner's tax liability for the years before us in accordance with the *American Hide & Leather Company* decision. But the petitioner not only did not offer such evidence, does not claim it would be benefited thereby, but does not even seek the benefit, if any, which might thus result. In both cases the statute required a change in the method of reporting income from January 1, 1918, forward and thus required the use of a short period beginning on that date. But there is no similar reason nor any justification for the use here of a short period beginning January 1, 1920. Its use would eliminate the income of this taxpayer for the period May 1, 1919, to December 31, 1919, and require the Commissioner to limit his determination for the purpose of this case to the liability on the income from the short period only. He committed no error in using the period May 1, 1919, to April 30, 1920, as the basis for his determination of a deficiency, and there is nothing in the law to require him to shorten this period. If double taxation results, it results from an incorrect computation of prior tax liability and furnishes no excuse for an incorrect division of the periods before us. The Commissioner has correctly applied the taxes shown to be due on the erroneous calendar year returns except that he should have applied the excess (" overassessment ") of the tax shown to be due on the 1922 return over the tax determined to be due for the fiscal year ending April 30, 1922, against the tax determined to be due for the fiscal year ending April 30, 1923, and a similar adjustment is necessary in regard to an excess for the fiscal year ending April 30, 1924.

*Judgment will be entered under Rule 50.*