INTERNATIONAL CIGAR MACHINERY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 71331, 76285. Promulgated June 16, 1937.

*Robert H. Montgomery, Esq., Thomas G. Haight, Esq., J. Marvin Haynes, Esq.,* and *James O. Wynn, Esq.,* for the petitioner.
*P. M. Clark, Esq.,* and *S. B. Pierson, Esq.,* for the respondent.

128

OPINION.

ARUNDELL: The net income determined by the respondent in the deficiency notice for 1929 will be adjusted for depreciation on tools, jigs, dies, and patterns and for additional New York State franchise taxes, in accordance with paragraphs 11 and 13 of the agreed statement of facts set forth in the findings, in the recomputations to be made under Rule 50.

The principal issue arises out of the respondent's treatment of the lump sum payments received by the petitioner from cigar manufacturers. The Commissioner in determining the deficiency treated them as advance rentals or bonuses for the use of patents. The petitioner has never treated them on its books or in its returns as income.

The petitioner contends that its method of accounting and reporting clearly reflects its income and is in accordance with good accounting practice, whereas the respondent's proposed treatment is not. The petitioner's books have reflected as income from royalties the periodic sums paid to it by the cigar makers based on the number of cigars manufactured and these amounts have been returned as income. Petitioner's books and returns have also carried as income the fair value of the machines repossessed in the few cases of bankruptcy of cigar manufacturers. The immediate question for decision is whether the carrying of these items on petitioner's books correctly reflects the income from the patents or whether there should also be included the lump sum payments in order to clearly reflect income.

Section 41 of the Revenue Act of 1928 provides in part as follows:

The net income shall be computed * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method em-

ployed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income * * *.

Article 323 of Regulations 74 reads in part as follows:

ART. 323. *Methods of accounting.*—It is recognized that no uniform method of accounting can be prescribed for all taxpayers, and the law contemplates that each taxpayer shall adopt such forms and systems of accounting as are in his judgment best suited to his purpose. Each taxpayer is required by law to make a return of his true income. He must, therefore, maintain such accounting records as will enable him to do so.

Under similar provisions of other statutes, it has been said that "the method employed by the taxpayer is never conclusive." *Brown* v. *Helvering*, 291 U. S. 193. On the other hand, it has been said that the requirement that the method of accounting clearly reflect income means only "that the books shall be kept fairly and honestly. * * * In other words, the books are controlling, unless there has been an attempt of some sort to evade the tax." *Osterloh* v. *Lucas*, 37 Fed. (2d) 277.

There is no question as to what the petitioner has done in this case. It has computed its net income in accordance with the method of accounting regularly employed in keeping its books. Consequently, we have the narrow question of whether that method clearly reflects income.

At the outset, we are clearly of the opinion that the lump sum payments are not in the nature of rentals or royalties. Rentals or royalties are paid for the use of property. The lump sum payments here were made for the construction of a capital asset for the use of which royalties were paid. The situation here is somewhat like that in *Duffy* v. *Central Railroad Co.*, 268 U. S. 55, where the lessee of a railroad under the terms of the lease spent a substantial sum for additions and betterments and construction of a pier. The lessee sought a deduction for such expenditures under the provisions of the 1916 Act which included "rentals" among ordinary and necessary business expenses. The deduction was disallowed, the Court saying: "The term 'rentals', since there is nothing to indicate the contrary, must be taken in its usual and ordinary sense, that is, as implying a fixed sum or property amounting to a fixed sum, to be paid at stated times for the use of property." From the viewpoint of the lessor it is now held that improvements to leased premises made by the lessee currently give rise to income to the lessor only to the extent of either (a) value of the improvements subject to the lease, or (b) an aliquot part of the depreciated value at the expiration of the lease. *Emma C. Morphy*, 35 B. T. A. 289. Applying either of these methods, there is nothing for this petitioner to report, as the useful life of the machines was shorter than the term of the lease. In this case the

lessee, that is, the cigar maker, pays for the cost of construction of a machine that he desires to lease on a royalty basis just as the lessee in the realty lease case pays the cost of erecting a building which, with the land, it rents for periodic cash rentals. If in this case the construction costs had been paid by the cigar makers directly to the American Machine & Foundry Co., then clearly, under the principle of the realty lease cases, they would not be income to the petitioner. The substance of the transaction is not changed by having the construction costs pass through petitioner's hands under a system whereby it did not profit from the funds.

In all the years of petitioner's operation it has never in fact made a profit from the receipt and disbursement of the lump sum payments. Where there is in fact no profit, the income would be distorted rather than clearly reflected by including in income accounts the non-profit items. Of course, methods of accounting may differ but they may still arrive at the same net income. This is contemplated by both the statute and regulations quoted above. There is testimony in this case by well qualified accounting experts that it might have been proper to treat the lump sum payments as deferred income spread over the life of the contracts and to deduct an equivalent amount annually for depreciation of the machines. The result reflected on the books under that system would be precisely the same as under the petitioner's method. There would be no income reflected for any year or any cycle of years. The advantages of petitioner's method over that of charging on and charging off over a period of years are its simplicity and exactness. Under the other method the accounts would need be carried over a period of years and if the useful life of the machines was not exactly coextensive with the contract period adjustments would need to be made to reflect the difference. The life of the contracts in this case would be difficult to determine in view of the provision that they were to continue in effect during the life of the patents in existence covering the particular machine and further for the life of any additional patents that might be granted on any new parts, attachments, or improvements that might be made or added to the machine. The lives of the contracts have been repeatedly extended by reason of the issuance of new patents. Approximately 50 such patents have been issued to the petitioner. A typical example is that of the "Cross Feed." The patent on the cross feed was issued in 1929 and that improvement was attached to 99 percent of the machines in the hands of cigar makers, thus prolonging the lives of the 99 percent of the contracts beyond the useful life of the machines.

Section 41 of the Revenue Act of 1928 quoted above does not require any particular method of accounting. The Commissioner's

regulations recognize that no uniform method of accounting can be prescribed for all taxpayers and that the law contemplates that each taxpayer shall adopt such forms and systems of accounting as are in his judgment best suited to his purpose. We have had occasion to refer with approval to similar provisions of earlier regulations. The one qualification to the broad rule of the regulations is that the method adopted meets the statutory requirement of clearly reflecting income. *Ribbon Cliff Fruit Co.*, 12 B. T. A. 13; *H. Stanley Bent*, 19 B. T. A. 181; affd., 56 Fed. (2d) 99; *Alfred E. Badgley*, 21 B. T. A. 1055; affd., 59 Fed. (2d) 203. Any departure from a method long and consistently followed can be justified only on the ground that it does not clearly reflect income. *Bradstreet Co. of Maine*, 23 B. T. A. 1093; affd., on this point, 65 Fed. (2d) 943.

It is our opinion that petitioner's method of accounting for the income from its patents, i. e., by including royalty payments and value of repossessed machines in its income accounts, and excluding from such accounts the lump sum payments made by the cigar makers, does clearly reflect income. We are confirmed in our conclusion on this point by the testimony of the accounting experts who gave it as their opinion that petitioner's method of accounting for the lump sum payments was in accordance with good accounting practice.

We do not intend to hold that the method of accounting used by the petitioner is the only correct one, but that the method employed does clearly reflect its income, it has been long and consistently adhered to, and should not therefore be disturbed. It follows from our holding on the above issue that the petitioner is not entitled to depreciation deductions on the cigar machines.

The second issue for consideration is the date of the beginning of the 17-year period over which the development cost of the fresh work cigar machine patent is to be amortized and pro rata deductions therefore made in income tax returns. The respondent has held that this period begins on March 1, 1913, since application for the patent was made prior to and was pending on that date, and, accordingly, he has allowed only a proportional deduction of two months for 1930 and none for 1931. However, on the brief, the respondent concedes that the issue is controlled by our decision in *Stephens-Adamson Manufacturing Co.*, 16 B. T. A. 41; affd., 51 Fed. (2d) 681. See, also, *Hartford-Fairmont Co.*, 12 B. T. A. 98; *A. E. Starbuck, Administrator*, 13 B. T. A. 796; and *John Douglas Co.*, 23 B. T. A. 1308. Under those decisions, the 17-year amortization period begins to run from the date the patent was issued, which, in this case, is April 6, 1915. The petitioner, therefore, is entitled to a deduction for each of the years 1930 and 1931 equal to one-seventeenth of the patent development cost.

The third issue is pressed by the petitioner only as an alternative to, and in the event of a decision unfavorable to it on, the first issue. We have sustained the petitioner's contention, in our decision on the first issue, that the respondent erred in including the construction costs received from the cigar manufacturers in income. Too, under that holding, the entire costs of the cigar machines are recovered in the years when acquired and delivered to the cigar manufacturers, and there are no remaining costs to be recovered by way of depreciation allowances. Any loss deductions for machines returned and scrapped must be limited to those machines which the petitioner has repossessed and which it has, under its method of accounting, included in income at their fair market value as of the time of repossession. These losses the parties have stipulated may be computed in the recomputations to be made under Rule 50.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

MURDOCK, concurring: The bookkeeping method which the taxpayer had long and consistently followed clearly reflected its net income. It made its income tax reports in accordance with that method. Thus, there is no occasion to require it to change to some other method which might also clearly reflect its net income. The decision of the case does not require the holdings made in the prevailing opinion that the lump sum payments are not in the nature of rentals or royalties and the inclusion of the lump sum payments in gross income would distort net income.

DISNEY concurs in the above.