ESTATE OF G. A. E. KOHLER, DECEASED, MARY E. KOHLER, ADMINISTRATRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARY E. KOHLER, TRANSFEREE OF THE ESTATE OF G. A. E. KOHLER, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOHN B. KOHLER, TRANSFEREE OF THE ESTATE OF G. A. E. KOHLER, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 76208, 79606, 79607.   Promulgated June 10, 1938.

*Errett G. Smith, Esq.*, for the petitioners.
*Frederick R. Shearer, Esq.*, for the respondent.

1020

OPINION.

MURDOCK: I—*Loss—Suspension Steel Concrete Co.*—The petition-ers do not contend that the $57,530.27 is deductible as a debt ascer-tained to be worthless and charged off within the taxable year 1931. Although the decedent kept books he made no charge-off on those books in connection with this item. The evidence does not clearly demonstrate whether the advances represented debts, that is, amounts which the decedent intended should be repaid to him by the corpora-tion, or capital contributions. Before they could be deducted there would have to be a disclosure of whether they represented debts or capital contributions. *Daniel Gimbel*, 36 B. T. A. 539; *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182. But, if it be assumed that the amount in controversy represented a debt, no more of that

debt is deductible in 1931 than the Commissioner has allowed. A taxpayer may not select the year in which to deduct a debt which to his knowledge has been worthless for some time. *Louis D. Beaumont*, 25 B. T. A. 474. If the amounts paid in prior years were a debt, it was worthless long prior to 1931 and should have been charged off and deducted in some other year or years.

The petitioners claim the deduction as a loss sustained in 1931. Sec. 23 (e) (2), Revenue Act of 1928. They say that the advances were capital investments in the corporation and the loss was sustained when the corporation was dissolved in 1931. If a stockholder contributes capital to his corporation, the contribution may represent additional cost of his stock which is recoverable as part of the basis, either when the stock is sold or when it becomes worthless. *John G. Paxton*, 7 B. T. A. 92; *Warren E. Burns*, 11 B. T. A. 524, affd., 31 Fed. (2d) 399; certiorari denied, 280 U. S. 564; *B. Estes Vaughan*, 17 B. T. A. 620. If a stockholder is forced to make advances to a corporation from which he can expect no return, the amount advanced in any year may be deductible as a loss as soon as it is made. The Commissioner has allowed the deduction of $256.40 apparently on this principle. Cf. *George H. Stanton*, 36 B. T. A. 112; *C. H. White*, 15 B. T. A. 1375. The advances here in question were made prior to the taxable year 1931. The evidence shows that the stock was absolutely worthless prior to 1931 and all cost of stock paid theretofore was deductible prior to 1931. Consequently, the petitioners have failed to show that the decedent was entitled to the deduction for 1931 as a part of the cost of his stock.

The petitioners advance one other theory to support their claim for the deduction. They point out that the decedent conducted experiments and invented an improved method of construction somewhat like the method covered by the patents belonging to Concrete but using square tubing with certain interlocking devices, as a result of which he received patents in 1926 and 1931. He did not assign these patents to Concrete. The petitioners claim that the advances to Concrete were thus merely a part of the work being done by the decedent to develop a method of construction, and, since he abandoned the enterprise in 1931, he is entitled to deduct as a loss for that year the amount which he had advanced to Concrete. However, if the promotion and development of the method be regarded as a single business enterprise, as the petitioners now urge, they are no better off. Some of the amounts were paid for taxes and other items, which on this theory of the case would be deductible as expenses in the year in which paid. The advances to Concrete were apparently related entirely to the patents owned by Concrete. As development expenses of those patents, they probably would have to be deductible during the life of the patents. *Claude Neon Lights, Inc.*, 35 B. T. A. 424, 442; *Leggett & Platt Spring Bed Manufacturing Co.*, 18 B. T. A.

1012. The decedent did not abandon in 1931 his patents for the improved method. Consequently, if the enterprise be regarded as a single enterprise, there is still no sufficient reason for deducting the advances to Concrete from 1931 income.

II—*Capital gain or loss—Cutler-Hammer Mfg. Co. settlement.*— The claims of the parties on this issue are rather complicated and no good purpose would be served in setting them forth in detail. The most extreme contention of the petitioners is that the decedent did not realize any profit in 1931, but, on the contrary, sustained a very large loss at that time. Their theory is that on March 1, 1913, he had a business which was worth $200,000, the $100,000 which he received in 1910 and $28,584.30 which was available to him in 1921 represented income under the contract, no part of which should be reported in 1931, $5,200.90 of the amount received in 1931 represented additional income and should be reported in that year, and the balance of $43,314.40 was all that he received in 1931 for his business. Consequently, he sustained a loss of $156,685.60 which is deductible for 1931. The respondent, on the other hand, contends that he erred in reducing the amount of $77,099.64 received in 1931 by $28,584.30, the profits which the decedent refused to receive in 1921.

There are a number of reasons why the contentions of the petitioner can not be sustained. In the first place the evidence does not show that the decedent's interest in the Kohler System business, including patents, personnel, drawings, and everything pertaining thereto, was worth $200,000 on March 1, 1913. Although there is evidence to indicate that this business was a valuable one, nevertheless no reasonable estimate of its actual value to the decedent on March 1, 1913, can be intelligently made from this record. The option price of $200,000, mentioned in the agreement, can not fairly be taken as evidence that the value of the business was $200,000 on March 1, 1913. That contract was entered into prior to March 1, 1913, and the option was never exercised. Unaccepted offers and unexercised options, particularly where they are in effect over a long period of time, may not be reliable evidence of value. *Anson V. Prouty et al., Executors*, 5 B. T. A. 107; *Eli J. Taylor*, 9 B. T. A. 442; *Union Terminal Elevator Co.*, 14 B. T. A. 55. There is other evidence to indicate that the business was not worth $200,000 on March 1, 1913.

Furthermore, a large percentage of the value was attributable, apparently, to patents which were exhausting year by year. The decedent during the life of the contract could have taken deductions for depreciation on any patent or other property used in the business which was depreciating or becoming obsolete. Likewise, if the contract itself had value on March 1, 1913, he could have taken deductions for the exhaustion of that contract during the period of its

life. It is impossible to determine from this record what portion, if any, of the value on March 1, 1913, of the decedent's property, was left at the termination of the contract after proper adjustments as of that date for exhaustion, and wear and tear, including obsolescence. A fair inference to be drawn from the record in this proceeding is that the appliances required rather frequent modifications, adaptations, and improvements to meet the ever changing demands of the printers. This, in turn, indicates that much of the value of the business as it existed on March 1, 1913, had become obsolete prior to April 1920. Any new devices or improvements developed during the contract would, of course, have no basis for gain or loss to the decedent, since they cost him nothing. If they had any cost to Cutler-Hammer, their cost was deducted before the decedent's share of the profits had been determined. That was equivalent to deducting all costs of the business as expenses, whereas the only costs which might form a basis would be such as had been capitalized, instead of deducted as expenses. Thus, not only is it impossible to determine the amount of the basis which remained, but it is impossible to determine whether any of the basis remained as of the date of the termination of the contract in April 1920. Cf. *Burnet* v. *Houston*, 283 U. S. 223.

Although the Commissioner makes no point of it, it is apparent that the decedent received or retained in the settlement some very valuable patents and rights in addition to the $50,000 and the forgiveness of the indebtedness. For example, he received the Stone patent, on which he later was able to collect $550,000. That patent had been applied for in 1910. Thus, there seems to be reason for not using all of the basis, even if we knew it, to offset the cash which was received.

The record also indicates that a large part of the success of the business would have to be attributed to the personal services and abilities of the men conducting it, particularly the engineers. These were items in which the decedent could have no property interest and on which he would have no basis for gain or loss. If the engineers, upon the termination of the contract of 1920, preferred to stay with Cutler-Hammer, the decedent could not compel them to come with him, and their failure to come with him could not give rise to a deductible loss. The contract of April 1910 contained no provision which required Cutler-Hammer to return to the decedent upon the termination of the contract any personnel, charts, designs, or blueprints.

If it were not for the action of the Commissioner, we would have some doubt whether the $77,099.64 received in 1931 was received for anything which had a basis for gain or loss in the hands of the decedent. However, the Commissioner determined the deficiency and

made his claim for an increased deficiency on the theory that a part or all of the payments received in 1931 represented amounts realized by the decedent from the disposition of the business which he owned on March 1, 1913, a capital asset. Consequently, if any basis were shown, it could be deducted from the amount realized. The burden was upon the petitioners to show error in the determination of the Commissioner. They have failed to show that the amount which the Commissioner has included in income in connection with this transaction was larger than or different from the correct amount. Also there is no sufficient reason to disturb the Commissioner's method of taxing the gain as a capital gain.

The Commissioner claims an increased deficiency on the ground that the amount of $28,584.30 should also be added to the decedent's income for 1931. That was the amount which was shown to be due the decedent on the statement rendered by Cutler-Hammer in February 1921. The decedent did not receive that amount in 1921 nor did he report it on his income tax return. However, the evidence fails to show that it should not have been included in his income for 1921 or some other year prior to 1931. The Commissioner has neither pleaded nor proved estoppel, and we are unable to say from this record that any larger amount should be included in the decedent's income for 1931 in connection with the Cutler-Hammer settlement than was included by the Commissioner in determining the deficiency.

III—*Income—Westinghouse litigation.*—The Commissioner has determined that all of the income from the settlement agreement with the Westinghouse Electric & Manufacturing Co. and the other companies was income which should have been accrued for 1931. The decedent kept his books upon an accrual basis. The amount which he was to receive was fixed in July 1931. It was to be paid absolutely, that is, there was no condition precedent to its payment. It is true that the decedent inserted in the agreement a condition that, if the second payment was not made, then the whole agreement would be called off. But Westinghouse had agreed without qualification to pay it. The petitioners make no contention that the amount recovered was not income within the definition stated in *Eisner* v. *Macomber*, 252 U. S. 189. Cf. *W. W. Sly Manufacturing Co.*, 24 B. T. A. 65. Income accrues when the amount of it and the right to it are fixed, provided the right is not contingent, and provided that there is a reasonable expectation that payment will be made in due course. *Continental Tie & Lumber Co.* v. *United States*, 286 U. S. 290; *Automobile Insurance Co.* v. *Commissioner*, 72 Fed. (2d) 265; *Bettendorf Co.*, 34 B. T. A. 72; *Corn Exchange Bank* v. *United States*, 37 Fed. (2d) 34; *United States* v. *Anderson*, 269 U. S. 422. No good reason appears why the amount should not have been accrued for 1931 or why it did not represent income for 1931 to one who kept books and

reported his income on an accrual basis. The determination of the Commissioner on this point is approved.

The petitioners contend that the amount received in 1932 should not be included in income for 1931 because the Commissioner has taken inconsistent positions in regard to this income. It is true that the Commissioner determined deficiencies for the period from January 1, 1932, until the date of the decedent's death on the basis of including these same payments in income for that period. He did that so that if he was wrong in including it all for 1931 he could protect himself. However, at the hearing in this case he agreed that decision should be entered in the proceeding, relating to the short period in 1932, holding that there was no deficiency for that period. He thus elected to stand upon his contention in this proceeding that all of the payment was income for 1931. The equitable grounds underlying the doctrines of abandonment and vexatious litigation do not favor these petitioners, who now have the advantage of a decision of no tax liability in 1932 and seek to escape tax altogether. There appears to be no merit in this contention. Cf. *James Couzens*, 11 B. T. A. 1040; *Stanford University Bookstore*, 29 B. T. A. 1280; *Cape Henry Syndicate*, 30 B. T. A. 794; *Swiss Oil Corporation*, 32 B. T. A. 777, 790; *Estate of William Steele*, 34 B. T. A. 173, 176.

IV—*Transferee liability.*—The transfers which the decedent made to his wife and his son left him with no assets. There is evidence that at the time of the transfers a suit was pending against him in which judgment was finally entered against his estate. There is also evidence that counsel were advising him to transfer his property to avoid the effect of that judgment, which was anticipated in January 1932. The wife and the son are each liable as transferees to the extent of the value of the property which they received. *Helen Dean Wright*, 28 B. T. A. 543; *Lehigh Valley Trust Co.*, 34 B. T. A. 528; *Margaret Wilson Baker*, 30 B. T. A. 188; affd., 81 Fed. (2d) 741; *Isaac Michael Green*, 26 B. T. A. 719; *Updike* v. *United States*, 8 Fed. (2d) 913; *Continental Baking Co.* v. *Helvering*, 75 Fed. (2d) 243; *Benjamin E. May*, 35 B. T. A. 84.

The petitioners point out that the Commissioner assessed the full amount of the deficiency as a jeopardy assessment against the estate on January 11, 1935, and against Mary E. and John B. Kohler as transferees on January 28, 1935. They contend that he was without authority to make a jeopardy assessment of a transferee liability. But that question need receive no consideration by the Board because the Board has nothing to do with the assessment and collection of the taxes. It exhausts its authority when it determines the amount of the deficiency and the liability of the transferees in this proceeding.

*Decisions will be entered under Rule 50.*