C. F. MUELLER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 85964, 96331. Promulgated June 30, 1939.

*W. C. Magathan, Esq.*, for the petitioner.
*F. S. Gettle, Esq.*, for the respondent.

OPINION.

MURDOCK: Amounts received by a taxpayer upon fully paid building and loan shares in excess of the subscription payments on those shares are dividends. *Aaron Ward & Sons*, 23 B. T. A. 1279; affd., 65 Fed. (2d) 758. The building and loan associations were domestic corporations. A corporation receiving dividends from another domestic

corporation was entitled to deduct them in computing taxable net income under section 23 (p) of the Revenue Act of 1928 and similar provisions in prior acts. This was changed by the Revenue Act of 1932, which provided that a corporation could deduct dividends received from a domestic corporation "which is subject to taxation under this title." It is conceded that the building and loan associations in which this petitioner owned stock were not subject to taxation under the various revenue acts. See section 101 (4) of the Revenue Act of 1932. Therefore, beginning in 1932 and continuing through 1935, the dividends were no longer deductible by this petitioner. It reported its net annual earned accruals as interest in the earlier years, and paid tax accordingly, but obtained refunds for two of those years. It reported the accruals for later years as dividends. There were no earnings for 1932, but the amounts reported thereafter were subject to tax.

The building and loan associations annually notified the petitioner and other stockholders of the amount of dividends declared on the stock for the year, of the book value of the stock for the year, and of the withdrawal value of the stock for the year. The petitioner kept its books upon an accrual method of accounting. Although the details of that accounting method are not disclosed in this record, the petitioner regularly, and at least annually, accrued on its books the net annual increase in the withdrawal value of all shares. The petitioner reported on its returns for each year the excess of that annual accrual over the subscription payments made on the shares during the year and strenuously argues that such a method of accounting for and reporting income upon building and loan shares clearly reflects its income and may not be changed by the Commissioner. The Commissioner, on the other hand, argues that the petitioner had no right under the law to accrue either the net increase as income or any decrease as a loss. He further argues that even if the accrual of the increase were permissible, nevertheless, there is no justification for the accrual of any loss for 1932.

The Commissioner has presented no persuasive argument in support of his contention that the accounting method of the petitioned must be rejected in its entirety in favor of a method whereby all of the income is reported at the time the shares become fully paid. He argues that the requirement of notice before withdrawal prevents an accrual of the annual increase in withdrawal value. The evidence shows that actually the requirement of notice was not enforced, but even if it had been enforced, that circumstance alone would certainly not prevent an accrual within the year of the increase in withdrawal value. When the right to an amount becomes fixed, the amount may be accrued despite the fact that it may not be payable until somewhat later. Cf. *Herbert* v. *United States*, 81 Fed. (2d) 912; article 42–3 of Regu-

lations 86, and similar articles of prior regulations, which hold that interest credited to savings accounts is income when credited even to one on a cash basis, despite an unenforced ruling of the bank requiring notice of 30 days for withdrawals. Another argument presented by the Commissioner is that the withdrawal value was not unqualifiedly subject to the demand of the petitioner. He thus confuses constructive receipt by one on the cash basis with an accrual method of accounting. Regulations and cases cited, dealing with constructive receipt, are not in point as to accruals. He relies very strongly upon a memorandum opinion of the Board in which there was no annual declaration of dividends, no annual fixing of withdrawal value, and no regular method of accounting, so far as is shown by the report.

The amount which the petitioner accrued in each year was an amount which became fixed and available to it for the first time within that year. The right of the petitioner to receive the amount came into being in that year. Thus it was properly accrued in that year. Cf. *Spring City Co.* v. *Commissioner*, 292 U. S. 182; *Commissioner* v. *Darnell, Inc.*, 60 Fed. (2d) 82; *H. H. Brown Co.*, 8 B. T. A. 112; *Owen-Ames-Kimball Co.*, 5 B. T. A. 921. It may be interesting to note in this connection that G. C. M. 15875, reported in C. B. XIV–2, p. 100, approves of a somewhat similar method of accounting for the annual increase in the value of United States Savings bonds which may be purchased at the beginning of their term for an amount less than that which is payable when they become due.

Section 42 of the Revenue Act of 1932 requires that income be reported in the year received except where the accounting method permitted under section 41 requires that it be reported for a different period. Section 41 provides a general rule in regard to accounting periods and methods of accounting. The rule is that the net income shall be computed in accordance with the method of accounting regularly employed in keeping the books of the taxpayer. The only exceptions are that if no such method has been employed, or if the method employed does not clearly reflect the income, the computation is to be made in accordance with a method which, in the opinion of the Commissioner, does clearly reflect the income. Cf. *Bradstreet Co. of Maine*, 23 B. T. A. 1093; affirmed on this point, 65 Fed. (2d) 943; *International Cigar Machinery Co.*, 36 B. T. A. 124.

The excess of the amount ultimately receivable over the subscription payments made on building and loan shares is income. The petitioner adopted and regularly followed a system of accounting whereby all of that income would be reported. That system of reporting income was one which clearly reflected the income over a period of years. The law is somewhat elastic in regard to account-

ing methods provided that they clearly reflect income. Where one taxpayer has consistently followed one method and another taxpayer has consistently followed a somewhat different method of accruing and reporting income from similar transactions, each may be permitted under the law to adhere to its own method. We need not decide whether other taxpayers could be required by the Commissioner to adopt the method of this taxpayer, since that is a wholly different question. The method of this taxpayer fairly apportions the total income to the various annual periods in which it was earned. Cf. *Burnet* v. *Sanford & Brooks*, 282 U. S. 359. It follows that the Commissioner erred in disregarding the accounting method regularly used by the taxpayer and in determining that the petitioner realized a profit of $22,735.50 in 1935 when the 500 shares became fully paid and were retired. The petitioner, in accordance with its method of accounting, had already accrued all but $4,200 of the total gain on the shares, and only the latter amount was taxable as a dividend on those particular shares for 1935.

The discussion so far has been confined to the propriety of the method used by the petitioner in reporting its income from the building and loan shares. The issue for 1932, however, is whether the petitioner is entitled to deduct a loss on those building and loan shares. Section 43 provides that deductions shall be taken for the taxable year in which " 'paid or accrued' or 'paid or incurred' dependent upon the method of accounting upon the basis of which the net income is computed", unless a different period must be used in order to reflect income clearly. This is a general provision and must be read in the light of any specific provision allowing a deduction. The petitioner may deduct for a loss only in accordance with the provisions of section 23 (d) and (f), which allow the deduction of losses "sustained during the taxable year." The petitioner does not claim the right to inventory its stock nor does it claim that the stock became worthless. Such an owner of corporate stock sustains a loss and is entitled to a deduction through a final disposition of his stock whereby he receives less than he paid for it. No authority has been cited to indicate that such a taxpayer may deduct a loss under any other circumstances. Mere fluctuation in the value of corporate stock is not deductible as a loss by one not entitled to use inventories. *Harry C. Howard*, 20 B. T. A. 207; affd., 56 Fed. (2d) 781; certiorari denied, 287 U. S. 619. Even an assessment paid by a stockholder may be additional cost of his stock rather than a loss where occasioned by losses of the corporation. *John G. Paxton*, 7 B. T. A. 92; *B. Estes Vaughan*, 17 B. T. A. 620; *Estate of G. A. E. Kohler*, 37 B. T. A. 1019, 1026; *W. R. Ranney*, 16 B. T. A. 1399. It is a loss only if the stock is worthless. Cf. *Jamieson Associates, Inc.*, 37 B. T. A. 92, 118; *George H. Stanton*, 36 B. T. A. 112. Additions to a reserve for

anticipated losses are not deductible since the statute "is concerned only with realized losses." *Lucas* v. *American Code Co.*, 280 U. S. 445, 449; *Weiss* v. *Wiener*, 279 U. S. 333; *William J. Ostheimer*, 1 B. T. A. 18; *Yost Auto Co.*, 26 B. T. A. 685. Cf. *Brown* v. *Helvering*, 291 U. S. 193.

The amount which the petitioner seeks to deduct for 1932 was not a loss actually sustained in a closed transaction. The petitioner continued to own the shares after 1932 and there was no reason to believe in 1932 that there would be a loss rather than a gain when the shares were finally disposed of and the transactions were complete. This record shows that some of the shares were paid off at a profit to the petitioner. Perhaps the principal difference between the accrual method and the cash method of deducting for losses sustained is that under the cash basis there must be payment of the loss before it can be deducted, while the taxpayer using an accrual method may take the deduction immediately when the events occur which cause the loss even though he has not paid it. An accrual method of accounting, however, does not permit a loss to be anticipated while the transaction is still open. This is clearly true in the present case, where, although there was a reduction in the earnings subject to withdrawal, the transaction remained open with prospects of ultimate gain. The argument that a taxpayer should be permitted to continue with its regular method of accounting can not be used to justify a deduction for a loss where no loss has been sustained in a closed transaction. Although the year in which a loss is sustained is to be determined by a practical test, rather than a legal test, *Lucas* v. *American Code Co.*, *supra*, nevertheless a practical test here shows that the petitioner sustained no loss at all. Its shares for the moment became less valuable than they had been, but the question of ultimate gain or loss was still open.

Furthermore, the facts do not support any argument that this taxpayer had a regular method of treating transactions such as the ones here in question. The record shows that the petitioner's shares were never charged with losses prior to 1932. This is the first time that the petitioner was called upon to establish any accounting practice to cover such a situation. The petitioner has not shown how it accounted on its books for the losses charged to its shares on the books of the associations. Although the method now urged might be a reasonable one from an accounting standpoint, income can be clearly reflected without allowing the deductions claimed for 1932. No problem is presented of offsetting the income of a period with the expenses of earning that income. Cf. *Bradstreet Co. of Maine, supra*, and cases there cited. The value of the shares increased as the result of declarations of dividends from earnings of the associations prior

to 1932. The petitioner accrued and reported that part of the increase which it could withdraw. There was no increase in 1932. Either there would be additional earnings in later years or there would not. If additional earnings were later assigned to the shares, the petitioner could delay reporting any additional income until those earnings had offset the losses charged to the shares in 1932. In case there should be no future earnings, the petitioner would be entitled to deduct a loss at the time it disposed of the shares, if the amount realized was less than the total subscription paid upon the shares plus the total amount previously reported as income on the shares. The record does not show an accounting method regularly used by this petitioner under which the deductions would have to be allowed in 1932 in order to clearly reflect income. It follows that the petitioner is not entitled to deduct any loss upon these shares until they become worthless or are finally disposed of at a loss.

*Decision will be entered under Rule 50.*