## COMMISSIONER OF INTERNAL REVENUE
## v. AARON WARD & SONS.

No. 5030.

Circuit Court of Appeals, Third Circuit.

June 8, 1933.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and John MacC. Hudson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner.

L. L. Hamby, of Washington, D. C., for respondent.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This is an appeal from an order of redetermination of the Board of Tax Appeals. In March, 1916, the respondent, a New Jersey corporation, subscribed to 1,000 shares of the capital stock of the Fourteenth Ward Building & Loan Association, a domestic corporation. The respondent paid a membership fee of $1, at the time of the subscription and $97,000 in monthly installments of $1,000 each, or an aggregate sum of $97,001. Thereafter it applied to the association for withdrawal of its investment, and on March 18, 1924, it received $129,840 from the association in full payment of its stock.

Under the constitution of the association, a member was permitted to withdraw his investment after written notice. Each member was subject to certain fines or penalties for failure to comply with the rules of the association. His investment, including any profits credited to his stock, was subject to a proportionate share of any losses sustained by the association. The profits of the association were computed quarterly and a proportionate amount thereof credited to the shares of each member. A member who withdrew before the termination of the first year of his subscription was entitled to receive the amounts paid by him, less unpaid fines and his proportion of any loss sustained by the association. A member who withdrew before the termination of any subsequent year of his subscription was entitled to receive the amounts paid by him, plus a percentage of the profits credited to his shares, less unpaid fines and his proportion of any loss. The constitution further provided that the owner of the stock ceased to be a member of the association when his stock matured and was paid. No stockholder could withdraw any amount either of profits or investment

except by surrendering his stock for cancellation and terminating his membership.

The respondent withdrew from the association and received $32,839 in excess of the amount paid by it for the stock. The petitioner claimed that this sum was taxable as a gain or a liquidating dividend. The respondent contended, and the Board of Tax Appeals held, that the sum in excess of the amount paid by the respondent for the stock was a dividend from a domestic corporation, and, therefore, was exempt from taxation under the provisions of sections 201 (a) and 234 (a) (6) of the Revenue Act of 1924. These sections read:

Section 201. "(a) The term 'dividend' when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913." 26 USCA § 932(a).

Section 234. "(a) In computing the net income of a corporation subject to the tax imposed by section 981 [230] of this title there shall be allowed as deductions: * * *

"(6) The amount received as dividends (A) from a domestic corporation. * * *" 26 USCA § 986 (a) (6).

Cases cited by the petitioner containing a discussion of the meaning of the term "dividend" are not authoritative because Congress has specifically defined the word in the act and thus made that definition exclusive. The instant case contains all the essentials of a dividend, as defined in paragraph (a) of section 201. Distribution in money was made by the association to one of its shareholders out of profits of the association. The profits in question were necessarily accumulated after February 28, 1913, since the respondent did not become a shareholder until 1916.

The Treasury Department, when ruling in respect to building and loan associations, committed itself to the view that the profits of the association, periodically credited to its members, are to be treated as dividends within the meaning of section 201 (a). The ruling of the Internal Revenue Bureau, I. T. 1665, reported in C. B. II–1, pages 5 and 6, reads:

"While not actually distributed, these profits are credited periodically in proportion to the amount of stock actually paid for in the same manner that dividends are credited and paid in the ordinary commercial corporation. The shareholder is entitled to no credits if there are no earnings and such

credits vary with the vicissitudes of the business. They are in a very true sense similar to the dividends in other corporations. If such periodical credits were interest on money advanced, they would be fixed in amount and payable whether the corporation had net earnings or not.

"It is held, therefore, that the periodical distributions of earnings on running installment shares of stock paid or credited by a building and loan association to the holders of this class of stock are dividends within the definition of a dividend as set forth in section 201 of the Revenue Act of 1921, in so far as they are out of earnings accumulated subsequent to February 28, 1913."

The association accumulated and invested the dues paid periodically by the members. The profits were derived from investment of the dues and not from the sale of any of the property owned by the association. Profits, when made by the association, were credited regularly to the shares of the members in the same proportion as the number of shares owned by the member bore to the total number of outstanding shares. We think the profits made and apportioned among the stockholders constituted a dividend of profits. This is so, although the profits were accumulated until the shares matured, instead of being declared and paid at regular intervals. See Cary v. Savings Union, 22 Wall. 38, 22 L. Ed. 779.

The order of the Board of Tax Appeals is affirmed.