## HENDERSON v. UNITED STATES.
### No. 6805.

Circuit Court of Appeals, Third Circuit.
June 29, 1939.

Rehearing Denied Aug. 5, 1939.

Briggs G. Simpich, of Washington, D. C., for appellant.

J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., and Thos. J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., James W. Morris, Asst. Atty. Gen., and Sewall Key and John A. Gage, Sp. Assts. to Atty. Gen., for the United States.

Before BIGGS and CLARK, Circuit Judges, and DICKINSON, District Judge.

BIGGS, Circuit Judge.

From time to time between the years 1919 and 1927 the appellant subscribed for shares of stock in two building and loan associations, both Pennsylvania corporations, doing business in and about the Philadelphia area. To one building and loan association the appellant made payments totalling $47,231 up until December 4, 1931, when she gave notice, in accordance with the by-laws of the corporation, of the withdrawal of her shares, none of her shares being fully paid up. To the other building and loan association the appellant made payments totalling $6,384 up until January 30, 1932, when, none of her shares being fully paid up, she gave notice in accordance with the by-laws of the corporation of the withdrawal of these shares as well.

Both building and loan associations had been forced to foreclose upon and take title to many parcels of real estate. Neither association was able to meet the appellant's demands with cash. It was thereupon agreed between the appellant and one of the building and loan associations that it would pay to the appellant a portion of the sum due in cash and would transfer to her certain parcels of real estate at book value in payment of the balance of its indebtedness to her. The other building and loan association was unable to pay any cash and therefore transferred to the appellant certain parcels of real estate at book value in payment of its indebtedness to her. These transactions were executed as contemplated and as a result thereof the ap-

DICKINSON, District Judge, dissenting.

pellant received properties possessing a book value in amount equal to the sums paid in by her, less the cash received by her from one of the associations. Actually, however, the appellant was out of pocket to the extent of $36,252.

The appellant claimed this loss as a capital loss upon her 1932 income tax return. The appellant's income tax return for that year disclosed a total tax liability of $16,458.94, which she paid during the year 1933. Upon July 2, 1934, however, the appellant filed a claim for refund in the sum of $9,803.23, alleging that her tax for the year 1932 had been overpaid by her in this amount. She based this claim upon a contention that the loss of $36,252, heretofore referred to, was ordinary loss within the meaning of Section 23(e) (2) of the Revenue Act of 1932, c. 209, 47 Stat. 169, 180, 26 U.S.C.A. § 23(e) (2), and was therefore deductible from her gross income and was not a capital loss within the meaning of Section 101 of that Act, 26 U.S.C.A. § 101 note. The claim for refund was rejected and thereupon the appellant brought suit in the court below pursuant to the provisions of the Tucker Act, 28 U.S.C.A. § 41(20).

The learned trial judge held that the payment and transfer of assets made to the appellant by the building and loan associations constituted a distribution in partial liquidation of the assets of those associations within the meaning of Section 115(h) of the Revenue Act of 1932, 26 U.S.C.A. § 115(h), that these distributions were payment in full for the cancelled stock of the appellant, within the meaning of Section 115(c), 26 U.S.C.A. § 115 note, and that the loss to the taxpayer resulted from the exchange of a capital asset and was therefore a capital loss within the meaning of Section 101(c) (2).

*The Principles of Commissioner v. Aaron Ward & Sons, and of Hellmich v. Hellman, are not Applicable to the Case at Bar.*

■ The appellant, relying upon the decision of this court in the case of Commissioner v. Aaron Ward & Sons, 3 Cir., 65 F.2d 758, 759, affirming a decision of the Board of Tax Appeals reported in 23 B.T.A. 1278, 1279, takes two positions: First, that a withdrawing member of a building and loan association does not make a sale or exchange of shares of stock in building and loan associations when he delivers them up for cancellation, and second, that con-sideration paid or given to a withdrawing member by an association does not constitute a dividend in partial liquidation of the association.

In the cited case, the taxpayer, a New Jersey corporation, subscribed to the capital stock of a building and loan association, paid a membership fee of $1 and thereafter contributed by way of monthly installments upon the shares a total of $97,000. Thereafter, the taxpayer applied to the association for the withdrawal of its investment and received $129,840, or an excess of $32,839 over the amount paid in by it for the stock. The taxpayer contended that this excess was a dividend from a domestic corporation under the provisions of Sections 201(a) and 234(a) (6) of the Revenue Act of 1924 (Act of June 2, 1924, c. 234, 43 Stat. 253, 254, 284), and was taxable as such. This court sustained the taxpayer's contention, stating, "We think the profits made and apportioned among the stockholders constituted a dividend of profits." The appellant in the case at bar takes the position that in arriving at the conclusion stated, this court necessarily held that no sale or exchange of the shares of stock took place when the taxpayer in the Aaron Ward case withdrew its investment and turned in its shares.

In the case of Hellmich v. Hellman, 276 U.S. 233, 48 S.Ct. 244, 245, 72 L.Ed. 544, 56 A.L.R. 379, also cited by the appellant, it appears that the Hellmans had brought suits, pursuant to the provisions of Title II of the Revenue Act of 1918, 40 Stat. 1057, 1058, c. 18, against the Collector to recover additional income taxes assessed against them for the year 1919. The question presented to the Supreme Court for its determination was whether or not the gains realized by the Hellmans from the amounts distributed in the liquidation of the assets of a dissolved corporation out of its earnings and profits accumulated since February 28, 1913, were taxable to them as other gains or profits or whether the sums so distributed were "dividends" exempted from the normal tax. Subsection (a) of Section 201 of the Revenue Act of 1919 defined the term "dividend" as "* * * any distribution made by a corporation * * * to its shareholders * * * whether in cash or in other property * * * since February 28, 1913 * * *". Subsection (c) of Section 201 provided that "Amounts distributed in the liquidation of a corporation shall be treated as payments in exchange

for stock or shares, and any gain or profit realized thereby shall be taxed to the distributee as other gains or profits." The Supreme Court stated that the controlling question was "* * * whether the amounts distributed to the stockholders out of the earnings and profits accumulated by the corporation since February 28, 1913, were to be treated under section 201(a) as 'dividends,' which were exempt from the normal tax; or, under section 201(c) as payments made by the corporation in exchange for its stock, which were taxable 'as other gains or profits'", and held that the Hellmans' gains should be taxed "as other gains or profits."

The appellant contends that by parity of reasoning to Hellmich v. Hellman, supra, when subsections (a) and (c) of Section 201 of the Revenue Act of 1924 (the Act applicable in the Aaron Ward case) are read together, it is clear that the general definition of a dividend was not intended by Congress to apply to distributions made to stockholders in the liquidation of a corporation, but that Congress intended that such distributions for the purposes of taxation should be governed by Section 201(c). It follows therefore, says the appellant, that this court of necessity determined that neither sale, exchange, nor distribution in liquidation took place under the circumstances of the Aaron Ward case, since under the principle enunciated by the Supreme Court in Hellmich v. Hellman, supra, if sale, exchange, or distribution in liquidation had taken place the general definition of a dividend, as set forth in Section 201(a) of the 1924 Act, upon which this court relied in reaching its decision, would have been inapplicable.

The fallacy of this argument is immediately apparent when it is remembered that it does not appear from the record of the cause at bar that the property and money here received by the appellant were paid out of earnings and profits. The burden to show such a state of facts rested upon the appellant and this burden was not met by her. Upon the contrary, the evidence shows that the assets of the two associations were frozen and no earnings or profits were available for distribution to the appellant. It is clear that the appellant was willing to take substantial losses in order to liquidate her investments. The theory upon which the appellant seeks to sustain her case is not applicable under the circumstances of the case at bar.

The appellant also cites White v. United States, 305 U.S. 281, 59 S.Ct. 179, 182, 83 L.Ed. 172, in support of her contentions. The decision of the Supreme Court in this case, however, we think is authority against the appellant's position. In the White case, the decisive question was whether under Section 23 and Section 101 of the Revenue Act of 1928, 45 Stat. 791, upon the liquidation of a corporation stockholders' losses from their investment in its stock held for more than two years were ordinary losses deductible in full from gross income, or capital losses, 12½% of which was deductible under Section 101 of the Act from the tax as computed without regard to such losses. The decedent owned shares of stock in a corporation which upon liquidation paid less than the cost of the stock. The petitioners' contention was to the effect that the losses did not result from the sale or exchange of stock and therefore were not capital losses within the meaning of Section 101. The Supreme Court, interpreting Section 115(c) of the 1928 Act, similar to Section 115(c) of the Act sub judice, held that the stockholders sustained a capital loss. The Court held that Section 115(c) of the Act placed stockholders' gains and losses resulting from liquidation of a corporation on the same basis as gains and losses resulting from sale or exchange of stock, citing Hellmich v. Hellman, supra. The Supreme Court by Mr. Justice Stone, stated in part:

"Sections 12, 21, 22 and 23, found in subtitle B, General Provisions, to which §§ 101 and 115 are supplementary, govern computation of net income and of the tax. Subsection (c) of § 12, 45 Stat. 797, which fixes the rates of surtax, refers specifically to § 101 for the rate and computation of tax on capital net gains and losses. Section 21, 26 U.S.C.A. § 21, declares that net income means gross income computed under § 22, less the deductions allowed by § 23. As already noted, § 23(e), (g), providing for deductions of losses on sales or exchanges of property, is restricted in its operation by the provisions of § 101. Otherwise, § 101 would have no application to deductible losses. These general provisions thus incorporate by reference those of § 101 and give to them controlling effect in the computation of the tax in cases of capital gains or losses upon the sale or exchange of capital assets. In addition, § 22(d) provides that 'Distributions by corporations shall be taxable to the shareholders as provided in section 115,' which

in turn, as already noted, provides in paragraph (c) that liquidating dividends 'shall be treated as in full payment in exchange for the stock,' and that resulting gains or losses determined, as in the case of sales or exchanges of property, under § 111, are to be 'recognized only to the extent provided in section 112,' which also deals with sales and exchanges.

"Section 115(c) and §§ 111 and 112, to which it refers, standing alone give no clue to the part which a stockholder's loss on liquidation is to play, in computation of the tax, more than they give in the case of gains and losses upon sales or exchanges of property. In each case they tell how the gain or loss is to be 'determined' and declare that it shall be 'recognized.' But as § 115 says that the gain or loss upon liquidation is to be 'recognized' only to the extent to which gains or losses upon sales or exchanges of property are recognized by § 112, it follows that in one case, as in the other, we must turn to the general provisions of the Act to learn what recognition is to be given to the gains or losses under §§ 12, 22 and 23, as supplemented by § 101. Admittedly the recognition accorded by § 112 to gains and losses on sales of capital assets is controlled by § 101, and § 115(c), with its reference to § 112, is explicit that gains and losses upon liquidations are to receive the recognition accorded to gains and losses upon sales of property. Consequently the recognition required by § 115(c) of gains and losses on liquidations must, we think, be taken to be the same as that accorded to gains and losses upon sales of property in the computation of the tax under the general provisions to which §

115 and § 112 are supplementary and to be subject to the same restrictions as are imposed upon recognition of gains and losses from sales by the provisions of the supplementary section 101. Stockholders' gains and losses upon liquidation of the corporation are thus taxed on the same basis as gains or losses upon sales and exchanges of property, with the rate of tax and deductions prescribed by § 101."

See also Helvering v. Chester N. Weaver Co., 305 U.S. 293, 59 S.Ct. 185, 83 L.Ed. 180.

### The Right of the Appellant to Withdraw Her Shares and Her Status upon Withdrawal.

The right of the appellant to withdraw her shares was given by the by-laws of the building and loan associations which provided that shares could not be withdrawn until held for a period of two years. The demand made by the appellant for the withdrawal of her shares was made in accordance with the provisions of the by-laws. The appellant takes the position that having made her demands, in view of the provisions of Section 37, P.L. 73,[1] of the Building and Loan Code, embodied in the Act of April 29, 1874, and the amendment thereto contained in Section 2,[2] P.L. 16, of the Act of April 10, 1879, she gave herself a creditor status and made a settlement of indebtedness due her from the company which did involve the sale or exchange of stock. "All that happened", stated the appellant upon her brief, "was that the associations settled a liability or claim for a less amount than they might subsequently have been obliged to pay."

---

[1] Laws of Pennsylvania, Act of April 29, 1874, P.L. 73, Sec. 37, Clause 2, 15 P.S.Pa. § 991: "Any stockholder wishing to withdraw from the said corporation, shall have the power to do so by giving thirty days' notice of his or her intention to withdraw, when he or she shall be entitled to receive the amount, paid in by him or her, less all fines and other charges; but after the expiration of one year from the issuing of the series, such stockholder shall be entitled, in addition thereto, to legal interest thereon: Provided, That at no time shall more than one-half of the funds in the treasury of the corporation be applicable to the demands of withdrawing stockholders without the consent of the board of directors, and that no stockholder shall be entitled to withdraw whose stock is held in pledge for security."

[2] Laws of Pennsylvania, Act of April 10, 1879, P.L. 16, Sec. 2: "Stockholders withdrawing voluntarily, shall receive such proportion of the profits of the association or such rate of interest as may be prescribed by the by-laws, any law or usage to the contrary notwithstanding; but payment of the value of stock, so withdrawn, shall only be due when the funds now by law applicable to the demand of the withdrawing stockholders are sufficient to meet and liquidate the same, and then only in the order of the respective times of presentation of the notices of such withdrawals, which must have been presented in writing at a previous stated meeting, and have been then and there endorsed as to times of presentation by the officer designated by the by-laws of the association."

The decisions of the Supreme Court of Pennsylvania in Stone v. New Schiller Building & Loan Association, 302 Pa. 544, 153 A. 758, and in Brown v. Victor Building Association, 302 Pa. 254, 153 A. 349, 350, seem to us to dispose of this question. In the Stone case, citing Christian's Appeal, 102 Pa. 184, that court held, page 760, that a "withdrawing shareholder is at no time a creditor of the association, as that term is usually understood. * * * Withdrawing shareholders of a building and loan association, suspended in payments as appellee has been, have equal rights. A distribution of the assets among members without paying or securing the sum found due to another shareholder would be improper as to the latter, and such funds may be pursued in the hands of the members unlawfully receiving them, as an overpayment. Kurtz v. Bubeck, 39 Pa. Super. 370." While the associations in the case at bar were not suspended in payment of any action of the state banking department as was the building and loan association in the Stone case, none the less, both associations in the case at bar had reached a condition of almost complete lack of liquidity so that each was unable to meet the appellant's demands or any substantial part of them in cash. As was stated in the Stone case, page 760, "Solvency in connection with a building and loan association is not a matter of bookkeeping but of sound business judgment." As a matter of sound business judgment, in view of the very small cash positions of the associations, the great amount of mortgage loans outstanding and the excessive amount of real estate held by each, in our opinion the associations could not have given to the appellant a creditor status, in derogation of the rights of other stockholders, even if each association had desired to do so. There was at least a potential insolvency in the associations, a potential, if not an actual inability to meet their obligations as they arose. As was stated in the Stone case, "Insolvency, actual or potential, is incompatible with the right to withdraw." However this may be, the contention of the appellant that she achieved a creditor status must in any event fall before the provisions of Section 2, P.L. 16, that statute providing that payment shall be due to a shareholder only "* * * when the funds now by law applicable to the demand * * * are sufficient to meet and liquidate the same." Brown v. Victor Building Association, supra, page 350. It is obvious that there were no funds available in the treasury of either association to meet and liquidate the appellant's demands.

### The Withdrawals of the Appellant Reduced the Capital of Each Association.

Under the settled law of Pennsylvania, the withdrawal of the appellant from each association necessarily reduced the capital of the associations. As was stated in the Stone case, "Withdrawal necessarily reduces capital, as it takes the amount paid in by the shareholder." By the very nature of building and loan withdrawals, each constitutes a partial liquidation of the association from which the withdrawals are made. The association, unless it be of the so-called permanent type, creates new series of stock, paying off the old as they mature or are withdrawn, and in effect liquidates while continuing to do business. The withdrawals of the appellant effected partial liquidations of the associations.

### The Status of the Transactions between the Appellant and the Associations for the Purpose of Taxation.

The transactions between the associations and the appellant constituted partial liquidation of each association within the purview of subsection (h) of Section 115 of the Revenue Act of 1932. The property and money given and paid to the appellant by the associations must be treated therefore as payment in full for the cancelled stock of the appellant within the purview of subsection (c) of Section 115. It follows therefore that the losses to the appellant resulted from the sale or exchange of a capital asset within the meaning of Section 101(c)(2) and are subject to the 12½% limitation prescribed in Section 101(b) of the Revenue Act.

Accordingly the judgment of the court below is affirmed.

DICKINSON, District Judge (dissenting).

This dissent is based upon the following considerations:

The contract of a Building and Loan Association with the subscribers to its stock, is, in effect, that the subscriber at his option, may change his status from that of a stockholder to that of a creditor. The option is exercised by a withdrawal notice. After that the former stockholder becomes a creditor. It is true that he cannot enforce the payment of what is due him,

if the association is not in funds, but this inability to collect does not change his status. As debtor and creditor the Association and former stockholder may agree upon the payment of a less sum than that claimed, in satisfaction of the debt. The creditor suffers a loss of the difference. In like manner the parties may treat real estate or other property, as money, and the Association may convey or transfer it in satisfaction of the debt. In such case the gain or loss of the creditor is measured by the value of what he has received. The transaction in this respect does not differ from the like settlement by any other debtor and creditor. It may be that, if the Association is insolvent, the transaction may be questioned by other creditors as in fraud of them. In the instant case the debtor has not been adjudged to be insolvent, and if a like settlement could be made with all its withdrawing stockholders, would not be. It is likewise true that if the conveyed real estate proves to have its book value, there would be no loss. The case has been ruled however on the agreed fact that there has been a loss and what it is. The only question is whether the taxpayer should be allowed for it in his tax return. This dissent is based on the proposition that he should. This is not a case of liquidation but the simple part payment of a debt.