**GOODMAN v. HELVERING, Com'r of Internal Revenue.**

No. 29.

Circuit Court of Appeals, Second Circuit.

Nov. 4, 1940.

Harry J. Stein, of New York City, for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Joseph M. Jones, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The taxpayer appeals from an order assessing him for a deficiency in his income tax for the year 1932, and the case turns upon two questions: First, whether it was proper to include in his income a credit item in his favor entered upon the books of a corporation in which he was a shareholder; and second, whether his notices of withdrawal from a number of Pennsylvania building and loan associations converted his shares in them into debts, and allowed him under § 23 (j) of the Revenue Act of 1932, 26 U.S.C.A.Int. Rev.Acts, page 490, to deduct the amount which had become uncollectible and had been charged off on his books in 1932. The facts as to the first point were as follows. Goodman, the taxpayer, and Heyman owned all the shares in the Heyman & Goodman Company. Goodman had personally guaranteed a building contract entered into by a subsidiary corporation, Eldorado Towers, and was forced to respond when it became insolvent. Thereupon he persuaded Heyman that the Hey-

man & Goodman Company ought to bear part of the loss and as a result two cheques were drawn, the proceeds of which were used to pay the creditor, each cheque for half of Goodman's liability; one to Goodman's order, and one to Heyman's. Goodman's cheque was charged against his account in Heyman & Goodman, but Heyman's was carried into profit and loss. All this took place in 1931, and Goodman deducted the amount from his income tax return in the year as a business loss. During the year 1932 an entry was made in the books of Heyman & Goodman Company, crediting Goodman with the amount of the debit so charged against him in 1931 and charging profit and loss with the same amount. Goodman and Heyman both swore that this was done without their authority; and Goodman, that he did not learn of it until 1933 when a revenue agent was examining his return for 1931. When the agent called the entry to Goodman's attention, he answered that it was unauthorized, and in 1934 he caused the item to be reversed, restoring the books to their original showing. The credit entry had been made at the direction of one, Hoffman, the company's accountant in 1932, but neither was he called, nor was his absence accounted for. The company claimed and was allowed the corresponding debit as a deduction in its return for 1932. The Commissioner included the credit in Goodman's income for 1932, and taxed him accordingly. Eventually, the debit of 1934—included in other credits—was marked paid on the company's books by the deposit of cheques of Eldorado Towers, drawn to the order of Goodman's and Heyman's wives and endorsed by them. Everyone knew at the time that these cheques would not be paid, and they were never even presented. In 1932 a credit to Goodman of a similar kind was made upon the books arising from his payment of lawyers' fees for the company, but it is not necessary to consider this separately; it stands or falls with the main item.

The case in this aspect would have presented no difficulty, if the Board had found that the taxpayer had failed to prove that the credit of 1932 was entered upon the company's books without authority, for the evidence was not such as compelled acceptance of the taxpayer's story. True, Goodman and Heyman categorically denied that they had authorized the entry, and no one else had power to do so; but the circumstances were such as threw

much suspicion on the whole affair. Hoffman, the accountant, was the only person who could have explained how and why the entry got on the books, and he did not appear. It would have been most extraordinary for him to presume ·to create a liability of over $26,000 against the company without the direction of at least one of its two owners. There had been no mistake in fact; the books read exactly as the transaction had originally gone through, and there was no conceivable reason for the change unless it was intended really to be a change. If it was a fraud designed to permit a deduction from the company's income, it is unlikely that Hoffman devised it and forged the books sua sponte. Finally the way in which the debits restored in 1934 were eventually. paid, serves still further to deepen suspicion. But the Board spoke so equivocally that we are not sure what it meant; its memorandum first appears to hold that after the company had deducted the debit in its own return, it was too late for Goodman to challenge the corresponding credit in his return for the same year. But then it went on to say that, even if it were wrong as to that, the "alternative reason" urged by the Commissioner was "not without substantial merit." Finally, after quoting at length from the Commissioner's brief, it ended by saying that it need not "go as far," but that the acceptance in payment of the Eldorado cheques was "at least a circumstance tending to justify the inference which the respondent puts upon the method used for the elimination of the debit balance." Did this passage mean that the taxpayer had failed to prove that the credit of 1932 was entered without authority, or did it not decide that issue at all? On the whole it seems best to take it as a finding in spite of its non-committal form, for otherwise it could not serve as an alternative ground to support the decision, as it was intended to do. Accepting it as such, we affirm the order pro tanto; but if the taxpayer is not satisfied that our interpretation is right, we have enough doubt to justify a remand so that the Board may correct us, if we are wrong.

▮ The second question involves the status of a shareholder in a Pennsylvania building and loan association, who has given notice of withdrawal under § 991 of Title 15 of Purdon's Statutes, the Laws of Pennsylvania. That section provides that a shareholder who wishes to withdraw from such a corporation may do so by giving thirty days' notice of his intention, and that thereupon he becomes entitled to get back his subscription. Goodman was the holder ,of shares in different companies of this kind and in May, 1932, he served notice of withdrawal upon all of them. By the end of the year there had been a sharp decline in the value of all such shares, the amount of which Goodman calculated from sources satisfactory to him and charged off the claims pro tanto on his books. These figures he deducted from his income in 1932 on the theory that they were allowable under § 23 (j) of the revenue act of that year, as debts which had become partially worthless. The Commissioner held that the withdrawal notice did not change Goodman's status as shareholder, and that he must wait until the liquidated value of his shares was finally determined by an "identifiable event" before he could deduct anything.

The Supreme Court of Pennsylvania has decided that the privilege of a shareholder in such associations to withdraw is contingent upon the solvency of the company at the time he gives the prescribed notice. Stone v. New Schiller B. & L. Ass'n, 302 Pa. 544, 153 A. 758; Weinroth v. Homer B. & L. Ass'n, 310 Pa. 265, 165 A. 28. See also Henderson v. United States, 3 Cir., 105 F.2d 461. The doctrine is that on withdrawing he gets a right junior to all creditors and establishes no priority over other shareholders; he is allowed to leave the corporation only on condition that after his withdrawal enough shall be left to satisfy all shareholders who remain. In the case at bar the only evidence of the solvency of the associations was Goodman's testimony that when he filed his notices the officers who received them in every case assured him, either that the company was solvent, or that, although he might have to wait for his money, it was safe—which is the same thing in substance. Assuming for argument that this was competent at all, certainly the Board was not bound to accept it; indeed it was without any substantial probative value whatever. Once more, if the Board had made it clear that in its judgment the taxpayer had not carried the burden, we should have had no difficulty; but its finding upon this issue is nearly as non-committal as on the other. It was as follows: "This evidence, while possibly not sufficient to show actual insolvency, does not lend very strong support to petitioner's

conclusion that the associations were then actually solvent." Nevertheless, since this language too was apparently intended as the basis of the decision, we shall take it as a finding; though again, if the taxpayer is not satisfied that we have properly understood it, the cause will be remanded for further assurance that we are right. In the view we have taken it becomes unnecessary to pass upon the relevancy of the testimony excluded, which sought to prove the collapse of values in Pennsylvania building and loan association shares in December, 1932. With this condition as to both items the order will be affirmed. Order affirmed with leave to the petitioner to apply to the Board to reopen the case for additional findings of fact.