### Flora H. FRIEDMAN
### v.
### Francis R. SMITH, Collector of Internal Revenue.
### Civ. A. No. 9860.

United States District Court
E. D. Pennsylvania.

July 17, 1956.

Harry Norman Ball, Philadelphia, Pa., for plaintiff.

W. Wilson White, Eugene J. Bradley, Philadelphia, Pa., for defendant.

LORD, District Judge.

This is a tax refund suit arising under the Internal Revenue Laws of the United States, brought by the plaintiff (hereinafter referred to as "taxpayer") against the defendant (hereinafter referred to as "Commissioner"). At the trial, the parties stipulated the facts to be as follows:

The taxpayer timely filed her income tax return for 1945 and paid the tax shown to be due thereunder. Thereafter, the Commissioner made a deficiency assessment against the taxpayer in the sum of $2,872.93, which, together with interest, aggregated a total of $3,258.60, which was duly paid to the Commissioner. The taxpayer filed a claim for refund of the tax and interest paid representing such deficiency, which claim was disallowed by the Commissioner.

The deficiency assessment made by the Commissioner arose principally out of the following: (a) The disallowance by the Commissioner of the cost of various heating and plumbing installations scheduled and taken by the taxpayer as deductions from gross income but treated by the Commissioner as capital expenditure rather than deductible expens-

es; (b) The disallowance by the Commissioner of depreciation of $81.25 taken by the taxpayer on certain real estate; and (c) The action of the Commissioner in including in the taxpayer's income the amount of $6,181.88 and treating that amount as a dividend taxable at ordinary rates rather than at capital gain rates, as reported by the taxpayer in her return. Since the commencement of this action, the taxpayer has agreed to accept the Commissioner's determination in respect to the deficiencies resulting from the disallowances described in (a) and (b). The only issue, therefore, now submitted to the Court for decision is the action of the Commissioner as stated in (c).

Prior to 1941 the taxpayer purchased a one-half undivided interest in 125 shares of stock of Book No. 1794, Series 89 of the Lawndale Building and Loan Association (hereinafter referred to as "Association"). These shares had a redemption value in 1945 of $25,000. Payments for these shares were to be made in monthly installments of $1.00 per single share. The Association was incorporated under the laws of Pennsylvania. The Association's by-laws provide in part as follows:

"Article V

"Shares

"Section 1. Shares of the association * * * may be issued either serially or non-serially and may be either installment shares, full-paid shares, prepaid shares, * * * or any other kind of shares which are now or may be hereafter authorized by law.

"Section 2. Each owner of installment shares shall pay as dues at or before each monthly meeting of the board of directors $1.00 per single share and $2.00 per double share.

* * * * * *

"Section 7. * * * upon withdrawal after one year and within two years from the date of issuance, the holder shall be entitled to twenty-five per centum of the earnings apportioned or credited thereon; * * * and after six years and prior to maturity, fifty per centum of such earnings."

"Article VI

"Dividends

* * * * * *

"Section 2. Dividends on installment and prepaid shares shall be declared by the board of directors out of the undivided profits of the association. The basis for such dividends shall be the average amount, including dues and previously credited dividends, standing to the credit of each shareholder during the period since the date of the declaration of the previous dividend.

"Section 3. Cash dividends on full-paid shares shall be payable, out of the undivided profits of the association, * * * at such rate as the board of directors may determine; provided that, during any year, such rate shall not exceed the rate of dividends credited during such year to installment and prepaid shares."

Under the Association's method of operation, an installment stockholder such as the taxpayer pays monthly "dues" of $1.00 per share on the subscribed stock. When the payments made plus the "previously credited dividends" on the installment shares of stock equals the par value of $200 per share, the stock matures and the proceeds then become unconditionally available to the subscriber for the stock. The 125 shares were issued November 1933 and matured May 1945, a period of 139 months. At maturity, the "previously credited dividends" on the stock amounted to $7,625.00 computed as follows:

Total amount received:

| | |
|---|---|
| 125 shares @ $200.00 per share | $25,000.00 |
| "Dues" paid to the Association on the 125 shares: 139 months @ $1.00 per share | 17,375.00 |
| Dividends previously credited to and paid in 1945 on stock: 125 shares @ $61.00 per share [1] | $ 7,625.00 |

On the Series 89 stock, the "dues" plus "previously credited dividends" amounted to $192.01 per share for the 132-month period November 1933 to October 1944 and $7.99 per share for the 7-month period November 1944 to May 1945, totalling $200.00 per share.

In the year 1941, the taxpayer became the owner of the entire 125 shares of the aforesaid stock by acquisition from one Harry Fried, paying him the sum of $1,443.12 to acquire his interest in the undivided one-half of the Association's accumulated earnings attributable to the 125 shares of stock.

In 1945 the 125 shares of stock were redeemed by the Association and the taxpayer received from the Association the redemption value of $25,000. When the stock matured in 1945 the Association credited to the taxpayer the sum of $7,625.00 representing a distribution to her of Association earnings on her shares of stock.[2]

Taxpayer filed her returns on a cash basis and, hence the increments in value of the stock were never accrued by her in prior tax years. The Commissioner determined that taxpayer was accountable for only one-half of the accumulated "previously credited dividends" on the stock in December 1941, during the period in which she owned only a one-half interest in the 125 shares of stock. In her 1945 return, taxpayer reported a

1. The Association's certified Annual Report as of October 21, 1944, discloses the following on Series 89 stock (Nov. 1933 to Oct. 1944, 132 months):

| Paid in per share | Profit ("previously credited dividends") per share | Book value per share |
|---|---|---|
| $132.00 | $60.01 | $192.01 |

The "previously credited dividends" on this series from October 21, 1944, to May, 1945, the date of maturity, amounted to 99 cents per share, which results in the total "previously credited dividends" per share for the 139 months of $61.00.

2. An arithmetical recapitulation of the transaction is as follows:

| | | |
|---|---|---|
| Total amount received: 125 shares @ $200.00 per share | | $25,000.00 |
| Dues paid to the Association on the 125 shares 139 months @ $1.00 per share | | 17,375.00 |
| Previously credited dividends paid in 1945: 125 shares @ $61.00 per share | | 7,625.00 |
| Less: | | |
| Total previously credited dividends in 1941 | $2,886.25 | |
| Dividends attributable to one-half interest in stock in 1941 | 1,443.13 | 1,443.12 |
| Net amount of previously credited dividends received by taxpayer in 1945 | | $6,181.88 |

long-term capital gain of $6,181.88 realized on the stock computed as follows:

B & L Stock

Lawndale B & L Association

| | |
|---|---|
| The amount of dividend reported as result of share maturity is the sum of | $7,625.00 |
| From 11/8/33 to 12/31/41 this taxpayer had a one-half interest—the earning value of the shares in 1941 amounted to | 2,886.25 |
| This sum is deducted from the gross income of $7,625 as above resulting in | $4,738.75 |
| To this figure is added one-half of earning value in 1941 of $2,886.25 | 1,443.13 |
| Total long term capital gain share maturity | $6,181.88 |

The Commissioner determined that the $6,181.88 represented the amount of "previously credited dividends" which were not made available to the taxpayer until the year 1945. That is, from the full dividend of $7,625.00 should be deducted the cost of $1,443.12 (the amount paid by taxpayer to Fried) leaving the balance of $6,181.88, representing the net amount paid by the Association out of earnings and which it is claimed constituted a taxable dividend.

The sole question presented to the Court is whether the sum of $6,181.88 received by the taxpayer in 1945 is taxable to her as ordinary income, as determined by the Commissioner, or as capital gain, as claimed by the taxpayer. If the Commissioner's determination is sustained, the present action is to be dismissed with prejudice with judgment and costs entered in favor of the Commissioner. On the other hand, if the taxpayer's contention is sustained, she is entitled to a refund of $1,859.92 plus statutory interest and costs.[3]

---

3. The appropriate sections of the Internal Revenue Code, 26 U.S.C.A., to be construed provide as follows:

"§ 22. Gross income

"(a) *General definition.* 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

* * * * *

"§ 115. Distributions by corporations

"(a) *Distribution by corporations.* The term 'dividend' when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminu- tion by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *

* * * * *

"(c) *Distributions in liquidation.* Amounts distributed * * * in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. * * *

* * * * *

"(g) *Redemption of stock.*

"(1) *In general.* If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the *distribution and* cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

* * * * *

"(i) *Definition of partial liquidation.* As used in this section the term 'amounts distributed in partial liquidation' means a

### Discussion

The defendant contends that the present case is controlled by a decision of this Circuit in Commissioner of Internal Revenue v. Aaron Ward & Sons, 3 Cir., 1933, 65 F.2d 758. In that case, the taxpayer had subscribed to 1,000 shares of the capital stock of the Fourteenth

distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock. * * "

Treasury Regulations 111, promulgated under the Internal Revenue Code of 1939 provide:

"Sec. 29.42–3. *Examples of Constructive Receipt.*— * * * An amount credited to shareholders of a building and loan association, when such credit passes without restriction to the shareholder, has a taxable status as income for the year of the credit. If the amount of such accumulations does not become available to the shareholder until the maturity of a share, the amount of any share in excess of the aggregate amount paid in by the shareholder is income for the year of the maturity of the share.

\* \* \* \* \*

"Sec. 29.115–1. [as amended by T.D. 5377, 1944 Cum.Bull. 257]. *Dividends.*— The term 'dividend' for the purpose of chapter 1 * * * comprises any distribution in the ordinary course of business, even though extraordinary in amount, made by a domestic or foreign corporation to its shareholders out of either—

"(1) earnings or profits accumulated since February 28, 1913, or

"(2) earnings or profits of the taxable year computed without regard to the amount of earnings or profits (whether of such year or accumulated since February 28, 1913) at the time the distribution was made.

\* \* \* \* \*

" * * * The term 'dividend' does not include distributions under section 115 (c), relating to distributions in liquidation, * * *

\* \* \* \* \*

"Sec. 29.115–5. *Distributions in Liquidation.*—Amounts distributed * * * in partial liquidation are to be treated as in part or full payment in exchange for the stock so canceled or redeemed. The gain or loss to a shareholder from a distribution in liquidation is to be determined, as provided in section 111 and section 29.111–1, by comparing the amount of the distribution with the cost or other basis of the stock provided in section 113; but the gain or loss will be recognized only to the extent provided in section 112,

and shall be subject to the conditions and limitations provided in section 117.

"The term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock. A complete cancellation or redemption of a part of the corporate stock may be accomplished, for example, by the complete retirement of all the shares of a particular preference or series, or by taking up all the old shares of a particular preference or series and issuing new shares to replace a portion thereof, or by the complete retirement of any part of the stock, whether or not pro rata among the shareholders.

\* \* \* \* \*

"Sec. 29.115–9. *Distribution in Redemption or Cancellation of Stock Taxable as a Dividend.*—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

"The question whether a distribution in connection with a cancellation or redemption of stock is essentially equivalent to the distribution of a taxable dividend depends upon the circumstances of each case. A cancellation or redemption by a corporation of a portion of its stock pro rata among all the shareholders will generally be considered as effecting a distribution essentially equivalent to a dividend distribution to the extent of the earnings and profits accumulated after February 28, 1913. On the other hand, a cancellation or redemption by a corporation of all of the stock of a particular shareholder, so that the shareholder ceases to be interested in the affairs of the corporation, does not effect a distribution of a taxable dividend. A bona fide distribution in complete cancellation or redemption of all of the stock of a corporation, or one of a series of bona fide distributions in complete cancella-

Ward Building & Loan Association. In 1924, after having made payments of $1.00 per share aggregating $97,000, taxpayer applied to the association for withdrawal of its investment, and received $129,840 in full payment of its stock. The difference between the aggregate amount of the monthly payments and the amount paid was held to constitute a dividend from a domestic corporation and not a capital gain.

The Constitution and By-laws of the Association in the Ward case are very similar to those here. There each member was subject to fines or penalties for failure to comply with the rules of the association; his investment was subject to a proportionate share of losses; profits were computed quarterly and a proportionate amount thereof credited to the shares of each member; members withdrawing after the first year were entitled to a percentage of the profits credited to their shares; and the owner of stock ceased to be a member when his stock matured and was paid at which time the stock was surrendered to the Association for cancellation.

In discussing the question as to whether the earnings were taxable as a capital gain or liquidating dividend the court said, at page 759:

" * * * The instant case contains all the essentials of a dividend, as defined in paragraph (a) of section 201. Distribution in money was made by the association to one of its shareholders out of profits of the association. The profits in question were necessarily accumulated after February 28, 1913, since the respondent did not become a shareholder until 1916.

\*      \*      \*      \*      \*      \*

"The association accumulated and invested the dues paid periodically by the members. The profits were derived from investment of the dues and not from the sale of any of the property owned by the association.

Profits, when made by the association, were credited regularly to the shares of the members in the same proportion as the number of shares owned by the member bore to the total number of outstanding shares. We think the profits made and apportioned among the stockholders constituted a dividend of profits. This is so, although the profits were accumulated until the shares matured, instead of being declared and paid at regular intervals. See Cary v. Savings Union, 22 Wall. 38, 22 L.Ed. 779."

I am of the opinion this decision is controlling in the instant case.

The taxpayer contends, however, that the Ward case was overruled by Henderson v. United States, 3 Cir., 1939, 105 F.2d 461. In the Henderson case the taxpayer subscribed for shares of stock in two Pennsylvania building and loan associations. At a time when none of her shares were paid up she gave notice in accordance with the by-laws of each association of her withdrawal. It was agreed among the taxpayer and the associations that they would in one case pay her a portion of the sum due in cash and would transfer to her certain parcels of real estate in payment of the balance of the indebtedness, and, in the other case, would transfer only parcels of real estate without any cash payment. The lower court held that the payment and transfer of assets made to taxpayer by the associations constituted a distribution in partial liquidation of the assets of those associations within the meaning of §. 115(c) of the Revenue Act of 1932; that these distributions were payment in full for the canceled stock of taxpayer within the meaning of § 115(c); and that the loss to the taxpayer resulted from the exchange of a capital asset and was therefore a capital loss. This was affirmed on appeal.

The taxpayer overlooks an important distinction between Henderson on the one hand and Ward and the instant case

---

tion or redemption of all of the stock of a corporation, is not essentially equivalent to the distribution of a taxable dividend. * * * "

on the other. In Henderson the taxpayer gave notice for the withdrawal of her shares at a time when none of her shares were paid up and at a time when *there were no profits* available for distribution. She received no profit whatever on the withdrawal, and the amount returned to her by the association was simply a return of capital. In response to the argument that the Ward case controlled, this Circuit drew a distinction between the two cases, saying 105 F.2d at page 463:

"The fallacy of this argument is immediately apparent when it is remembered that it does not appear from the record of the cause at bar that the property and money here received by the appellant *were paid out of earnings and profits.* * * * Upon the contrary, the evidence shows that the assets of the two associations were frozen and *no earnings or profits were available for distribution to the appellant.* It is clear that the appellant was willing to take substantial losses in order to liquidate her investments. The theory upon which the appellant seeks to sustain her case is not applicable under the circumstances of the case at bar." (Emphasis supplied.)

The taxpayer also relies upon Ashton v. Commissioner, 39 B.T.A. 888. But this is distinguishable on the same grounds as the Henderson case. In Ashton the capital of the association was impaired, the association had suffered losses, and the board of directors had adopted a resolution reducing the amount of the liability to shareholders, including those shareholders whose shares had matured, by 40 per cent of the amount *paid in* by such shareholders. There was no question there of *profits* received by the shareholder. The return of the amount paid in (diminished by 40 per cent) was considered simply a return of capital.

The taxpayer further cites Zenz v. Quinlivan, 6 Cir., 1954, 213 F.2d 914, as authority for her position. There a corporate stockholder's entire holdings were purchased by the corporation as treasury stock which absorbed substantially all of the accumulated earnings and surplus of the corporation. The court held the earnings taxable as a capital gain. But this was the ordinary form of corporation. In such case, the dividends are *paid and distributed* by the corporation to its stockholders when declared. However, with a building and loan association, in accordance with its by-laws, the earnings *are not paid* to the shareholders but are regularly credited to the shareholder's account as declared by the association. Certainly any dividends distributed on full paid shares would be taxable as income. I can see no distinction with respect to unmatured shares. The dividends in both instances are recurrent returns on the same stock. Other cases cited by taxpayer are not applicable here.

The Commissioner's position that the amount received by taxpayer representing the previously credited dividends is taxable as dividend income is also supported in Estate of Holmes v. Commissioner, 1 T.C. 508, 509–510, and C. F. Mueller Company v. Commissioner, 40 B.T.A. 195, 199.

In view of the foregoing and the provisions of Sections 22(a) and 115(a) and (g) of the Internal Revenue Code of 1939 and of Section 29.42–3 of Regulation 111, the Court holds the amount of $6,181.88 constitutes ordinary dividend income taxable at the rates applicable thereto.

### Findings of Fact

1. Prior to 1941 the taxpayer became the owner of a one-half undivided interest in 125 shares of stock in the Lawndale Building and Loan Association.

2. In 1941 the taxpayer became the owner of the entire interest in the 125 shares of stock by purchase from the co-owner thereof.

3. The 125 shares in question were installment shares which were issued in November, 1933 and which matured in May, 1945.

4. Under the Association's By-laws, holders of installment shares were required to pay monthly dues of $1.00 per

share, and when the monthly payments plus the previously credited dividends on the shares equaled $200, the stock matured and the proceeds became unconditionally available to the stockholder.

5. The dividends credited to the 125 shares in question amounted to a total of $7,625 upon maturity of the stock in 1945. This amount, plus $17,375 representing accumulated monthly dues, was paid to taxpayer in 1945. Of the amount received by taxpayer from the Association in 1945, the amount of $1,443.12 represented one-half of the dividends credited during the period in which the taxpayer owned only a one-half interest in the 125 shares of stock.

6. The dividends credited to the shares in question represented accumulated earnings and profits of the Association.

7. In no year prior to 1945 did the taxpayer report the increment in value of the stock on her federal income tax returns.

8. Of the amount of $7,625 received by the taxpayer in the year 1945 from the Association, $6,181.88 was substantially equivalent to a dividend and is taxable to her in 1945 at ordinary income rates.

## Conclusions of Law

1. Of the amounts received by the taxpayer from the Association in the year 1945, $6,181.88 was substantially equivalent to a dividend on taxpayer's stock in the Association.

2. The aforesaid amount was paid from accumulated earnings and profits of the Association.

3. The amount of $6,181.88 is taxable in 1945 at ordinary income rates.

4. Judgment will be entered against the plaintiff, the complaint is dismissed and the defendant awarded his costs.

An appropriate Decree may be submitted.